## IN THE COURT OF APPEALS OF IOWA

No. 17-1315
Filed February 21, 2018

IN THE INTEREST OF M.K.,
Minor Child,

J.D., Mother,
        Petitioner-Appellee,

T.K., Father,
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        A father appeals the termination of his parental rights to his child.

**AFFIRMED.**


        Susan R. Stockdale, Windsor Heights, for appellant.

        Elizabeth A. Kellner-Nelson of Kellner-Nelson Law Firm, P.C., West Des

Moines, for appellee.


        Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

A father of an eight-year-old child appeals an order granting the mother's petition to terminate his parental rights. He contends the record lacks clear and convincing evidence to support the grounds for termination cited by the district court.

## I.    *Background Facts and Proceedings*

The father and mother are the unmarried parents of a child, born in 2009. Following the child's birth, the district court established the father's paternity and prescribed an "almost 50/50" joint physical care schedule under which the mother cared for the child from Sunday through Thursday and the father took over from Thursday through Saturday. The court also ordered the father to pay child support.

The mother moved from Lee County to Polk County in late 2012. In light of the move, the care schedule was changed to afford the mother primary physical care of the child, and the father visitation on the third weekend of every month and for half the summer. The father's child support obligation was increased.

The father exercised visitation for more than three and a half years. In the fall of 2016, his in-person contacts with the child became sporadic. The September and October visits were cut short due to arguments between the father and paternal grandmother of the child. The father missed his November visit, and he only spent two hours with his son in December.

The following month, the mother petitioned to terminate the father's parental rights. Following an evidentiary hearing eight months later, the district court

granted the petition pursuant to two statutory grounds: Iowa Code sections 600A.8(3)(b) (2017) (abandonment) and 600A.8(4) (failure to pay child support). The father appealed.

## II.      Abandonment – Section 600A.8(3)(b)

"To abandon a minor child"

> means that a parent . . . rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(19).  A parent is deemed to have abandoned a child who is six months or older

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>         (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>         (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>         (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b).

The father contends the record lacks clear and convincing evidence to support a finding of abandonment.  He essentially concedes he failed to pay child support for a year and was $7000 in arrears.  *See id.*  He focuses on his "significant contact with [the child] since his birth," his "phone contact" with the child, and

"several text" inquiries to the mother about the child's welfare. *See id.* § 600A.8(3)(b)(1), (2).

Our de novo review of the record reveals the following facts. The father had a right to see the child every third weekend of the month. After the termination petition was filed, he did not take advantage of this right. Although he stated he lacked financial resources to travel to Des Moines every month, the mother had previously assumed the responsibility of transporting the child to Lee County for visits and, assuming she was unwilling to continue this practice, the paternal grandmother testified she was willing and able to transport the father to Des Moines.

We recognize the father's circumstances took a significant turn for the worse in the year preceding the termination hearing. He lost his jobs and housing and ran into criminal trouble in Illinois and Iowa. Most significantly, he was diagnosed with schizophrenia, and we hesitate to terminate parental rights of a parent who has been unable to fulfill his parental responsibilities due to health issues. However, efforts were made to aid the father through a mental commitment and hospitalization, and the father was prescribed medicines to alleviate his symptoms. Unfortunately the father refused to take the prescribed medicine for a significant period of time, at least over one year.

These adverse circumstances did not prevent the father from maintaining regular telephone contact with his child. The father phoned his son no more than seven times over the eight month period, with three to four of the calls coming in the month preceding the termination hearing. *See In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (noting the father "did not affirmatively attempt regular

communication with the child"). He messaged the mother about the child's welfare but failed to pursue the prescribed visitation schedule, despite the grandmother's offer of transportation assistance. *Id.* (noting father's "sporadic text messages to the mother" were "insufficient to meet the regular communication requirement").

It is true the mother turned down the grandmother's request for a visit shortly before the termination hearing. However, with that exception, there is scant if any indication the mother denied the father access to his child. While she did not offer to bring the child to Lee County as she had in preceding years, she had no statutory obligation to facilitate visits. *See* Iowa Code § 600A.8(3)(c) ("[T]he court shall not require a showing of diligent efforts by [the mother] to encourage the [father] to perform the acts specified in paragraphs 'a' or 'b' [of section 600A.8(3)].").

We conclude the mother proved the father abandoned the child within the meaning of section 600A.8(3). In light of our conclusion, we need not address the second ground for termination cited by the district court.

### III. Best Interests

We turn to whether termination was in the child's best interests. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998). The father had extreme anger issues that prompted the grandmother to curtail two visits in 2016. Although he did not physically harm his son, he recognized his outbursts were detrimental to the child. In the months after the shortened visits, the father did nothing to address these anger issues. By reducing his contacts with the child, he also weakened the bond between them. We conclude termination was in the child's best interests.

**AFFIRMED.**